FILED

**UNITED STATES DISTRICT COURT**
for the
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**



2021 JUL 20  PM 12: 10

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

DIANA LISA RICHARDSON          CASE No. 3:21-cv-717-TJC-JBT
*Plaintiff*


V.


THE UNITED STATES          Jury Trial: Not eligible under FTCA
*Defendant*


**ORIGINAL COMPLAINT FOR DAMAGES**

**UNDER THE FEDERAL TORT CLAIMS ACT**

Plaintiff Diana Lisa Richardson, a Pro Se Litigant, files this complaint against The United States as follows:


**I.  JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

1.  Plaintiff, Diana Lisa Richardson, resides at 1179 Bayshore Drive North, Jacksonville, Florida 32233, thus is a resident of the Middle District of Florida.

2.  The claims herein are brought against the Defendant, The United States, pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, *et seq.*) and 28

U.S.C. §§1346(b)(1), for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of Florida.

3. Venue is proper in that all of the acts and omissions forming the basis of these claims occurred on base at Naval Station Mayport, in Jacksonville, Florida which is located in the Middle District of Florida.

4. This suit has been timely filed, in that

    a. Plaintiff timely served notice of the claims on the Department of the Navy Judge Advocate General's Office Norfolk, Virginia as per 32 CFR § 750.36 Time limitations (a) (b) and (c).

- within 2 years of date of injury incidents
- within 2 years of receiving OSHA complaint response letter, dated 6 December 2017, when the Ms. Richardson discovered "the existence of additional acts giving rise to this complaint", within the Base Safety Investigation report submitted to OSHA, first provided to Ms. Richardson by OSHA in the complaint response letter dated 6 December 2017.

- Claims were filed prior to 17 June 2020, when Ms. Richardson first discovered that the facility in which she worked fell under the regulations set forth in Department of the Navy OPNAVINST 5100.23G Safety Manual and the NAVFAC SE Public Works Department Building Managers Handbook. Upon obtaining and reading both manuals, Ms. Richardson discovered she should have had training that would have informed her of her rights pertaining to safety investigations and the Department of the Navy mandated regulations and protocols for unsafe/unhealthful hazard/incident reporting. Upon discovering these additional acts giving rise to the claim, Ms. Richardson immediately prepared and timely submitted an amended claim to Department of the Navy JAG Office.

b. Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act.

c. By letter postmarked 19 February 2021, Plaintiff's claim was finally denied in writing by Department of the Navy Judge Advocate General. This action was filed within six months of postmark of the certified letter sent by the federal agency denying the claim.

d. Plaintiff has filed this claim within 4 years of injury incident as required by FS 95.11(3) (a).

e. The claim is timely filed in that it meets the following conditions of Continuing Violation for injury:

  i. The Defendant's wrongful conduct continued after the initial injury incident on 13 May 2016

  ii. Injuries to the plaintiff occurred after 13 May 2016

  iii. The defendant's wrongful conduct continued after the injury incident on 21 July 2017

  iv. Injuries to the plaintiff occurred after 21 July 2017

  v. The incident on 21 July 2017 was preventable had employees of the United States Government, while acting within the scope of their offices and employment, not acted wrongfully and instead acted with the duty of care mandated by OPNAVINST 5100.23G 1000-1005 for the 13 May 2016 incident.

  vi. The incidents of 25 October 2017 were preventable had employees of the United States Government, while acting within the scope of their offices and employment, not acted wrongfully and instead acted with the duty of care mandated by OPNAVINST 5100.23G 1000-1005 for both the 13 May 2016 and the 21 July 2017 incidents.

vii.   The defendant's wrongful conduct continued after the injury incident on 25 October 2017.

viii.  Claim for 25 October 2017 incident was timely filed.

## II.  STATEMENT OF CLAIM

1. **13 May 2016 – SAFETY HAZARD/INJURY/ILLNESS INCIDENT**

Naval Station Mayport MWR Fitness Center – Plaintiff, Diana Richardson reported an injury incident involving undiluted industrial pine cleaner fumes/vapors entering enclosed massage therapy work spaces through the HVAC system causing her to have respiratory distress and burning of eyes.

a.   Ms. Richardson, had the Fitness Center Supervisor (FCS), Steve Carman come to spaces to confirm the incident.

b.   When the FCS was told it smelled like Pine Sol by Ms. Richardson, he was argumentative and was dismissive of the occupant's safety concerns, stating that it couldn't be pine cleaner because "it wasn't used in the building".  Nikki Abernathy was present during this exchange.

c.   No inquiry into claimant's or other therapist's wellbeing was made.

d.  No offer to submit, or instruction for submitting, an incident

report was provided by the FCS.   He just left the spaces.

Ms. Richardson would much later discover the FCS had a duty

of care to see that she reported the mishap as a hazard, as

mandated by OPNAVINST 5100.23G

> 1404. Requirements to Ensure Reporting of All Mishaps
> and Hazards
>
> At all levels, the immediate supervisor has the greatest
> influence on mishap and hazard reporting. Regions and
> activities shall take the following action to ensure that
> they report all mishaps and applicable hazards:
>
> a. Indoctrinate all subordinates, especially new arrivals, to
> report all mishaps no matter how small, as well as the
> "near misses" as hazards where only chance prevented a
> mishap. Ensure personnel fully appreciate that activities
> cannot correct hazardous conditions unless personnel
> conscientiously report them.
>
> b. Ensure supervisors report all mishaps to the region or
> activity safety office immediately so the safety office can
> initiate the appropriate action for the investigation.

This would generate an unsafe/unhealthful hazard investigation

as per OPNAVINST 5100.23G CHAPTER 10 EMPLOYEE

REPORTS OF UNSAFE/UNHEALTHFUL WORKING

CONDITIONS 1002. Hazard Reporting, and provide Ms.

Richardson a written interim and/or complete response from the

investigator.

e.   The FCS returned to spaces.  He stated that he had investigated further and confirmed undiluted industrial pine cleaner had been poured down the drain pipes in the locker rooms. He stated the undiluted chemical had been poured down the drain by a contractor custodial employee. The FCS stated that the custodial employee was told not to do it again.   The FCS further breached his duty of care when after confirming an unsafe/unhealthful hazard existed, he did not contact Base Safety immediately as mandated by OPNAVINST 5100.23G.

f.   13 May 2016 Ms. Richardson emailed the FCS an incident account/report of the unsafe unhealthful injury incident.

g.   Ms. Richardson was concerned about and unsure how fumes could enter the massage work spaces since the spaces were not a part of the locker rooms and since the industrial chemical had been poured down a drain line.

h.   Monday 16 May 2016 Ms. Richardson called Jacksonville OSHA Office, OSHA referred Ms. Richardson to Naval Station Mayport Base Safety,

i.     16 May 2016 Ms. Richardson spoke with Petty Officer Jordon, at Base Safety, and he said that the incident had not been reported. He said it should have been reported immediately to them the day it happened and said it needed to be investigated.

j.     16 May 2016 Ms. Richardson emailed the FCS to let him know she had called OSHA and Base Safety and had been told the incident should have been reported to them immediately.

k.     17 May 2016 Ms. Richardson spoke with Petty Officer Jordon. He said he was new to the command and that this command did things differently than his previous command, and that he was told the request for an investigation had to come from the FCS. Base Safety had a duty of care mandated by OPNAVINST 5100.23G to investigate all reported hazards/incidents/mishaps. OPNAVINST 5100.23G 1002 b states that any employee can report directly to Base Safety.  Base Safety acted wrongfully when refusing to do an investigation reported by an employee other than the FCS.

l.     17 May 2016 Ms. Richardson received an email from the FCS telling her he would handle all communications with the Safety

Office "from now on."  In doing this the FCS breached his duty

of care mandated by OPNAVINST 5100.23G

> "1002 f. Encourage the originator to follow through if
> he/she is dissatisfied and 1005 e. Include safeguards to
> ensure that the command does not subject Navy employees
> to **restraint,** interference, coercion, discrimination, or
> reprisal by virtue of their participation in the region or
> activity's safety program". (emphasis added)

m.    Ms. Richardson received an apology from Hector, the custodial

employee who poured the undiluted industrial pine cleaner down

the drain. He stated he was trying to get rid of the smell in the

drain pipes.  Hector was not a contractor custodial employee, he

was employed by Naval Station Mayport MWR Fitness Center.

The FCS acted wrongfully when stating one of the custodial

services contractors poured the chemical down the drain when it

was one of his employees who poured the chemical down the

drain.

n.    Having heard nothing for over a week, Ms. Richardson asked for

an update.  The FCS stated no investigation was being done, that

he had been told the fumes couldn't have come through the

HVAC system so had to have come through the ceiling tiles and

that the custodial employee had been counselled not to pour the

undiluted industrial cleaner down the drains again. The FCS breached his duty of care to call Base Safety immediately.

o.   Ms. Richardson was the originator of the report. While the FCS, OSHA and Base Safety had been informed of the unsafe/unhealthful injury incident, it is still unknown by Ms. Richardson if it was recorded in the mandated ENTERPRISE SAFETY APPLICATIONS MANAGEMENT SYSTEM (ESAMS).

p.   Base Safety had a duty of care mandated by OPNAVINST 5100.23G 1002 to provide the originator of the reported incident/hazard with an interim or complete response of the mandated investigation within ten days of reporting the incident. Ms. Richardson was the originator. She never received an interim or complete written response.  Base Safety breached their duty of care.

q.   Ms. Richardson's injury lasted for three days but resolved itself without medical treatment. No Damages Claim was filed by Ms. Richardson for this incident due to the injury healing.

r.    Additionally, no damages were claimed for this incident in either of the future injury incident damages claims that would be submitted.

2. **21 July 2017- Naval Station Mayport MWR Fitness Center Identical Unsafe/Unhealthful Injury Incident** involving undiluted industrial grade pine cleaner fumes/vapors coming through the HVAC vent in enclosed massage therapy work spaces during a client massage session.  Session was stopped and immediately reported to Fitness Center Manager on Duty (MOD).

a.    Same custodial employee who poured undiluted industrial pine cleaner down the drain line on 13 May 2016, poured undiluted industrial pine cleaner down the locker room drain line again.

b.    The fumes from the undiluted industrial pine cleaner caused the Massage Client to have an asthma attack during her massage, requiring use of her rescue inhaler.

c.    Ms. Richardson had immediate respiratory distress requiring a medical urgent care facility visit on the day of the incident.

d.    Ms. Richardson had eye inflammation requiring treatment with optometrist and requiring referral to an Ophthalmologist for

ongoing treatment.  Treatment for eyes continued through 12 December 2017.

e.  The MOD filled out incident report for massage client, Ms. Richardson filled out and submitted her injury incident report to the MOD.

f.  The MOD did not contact Base Safety immediately as mandated by OPNAVINST 5100.23G.

g.  The MOD confirmed undiluted industrial pine cleaner had been poured down the drain pipes in the locker rooms by same custodial employee, who had been counseled on 13 May of 2016 not to do it again.

h.  The FCS had a duty of care to submit report into ESAMS within 48 hours as mandated by CNIC Policy.  Report was not input into ESAMS until 28 July 2017, seven days after the incident. (see attached)  The breach of this duty of care prevented Base Safety from doing an inspection as mandated by OPNAVINST 5100.23G 1002 d.

> "The safety office shall investigate all reports brought to its attention (alleged imminent danger situations **within 24 hours, potentially serious situations within three days,** and all other situations must be investigated within ten working days)." (emphasis added)

i.      28 July 2017  the FCS submitted the incident into ESAMS (ID#

174605).  The FCS acted wrongfully and concealed that it was

an injury incident requiring medical attention and resulted in

loss of work for Ms. Richardson and concealed that it injured an

additional person.  It was filed as a near miss.  ESAMS training

manual defines Near Miss as:

> "When an incident occurred, but no personal harm or
> property damage was sustained."

j.      1 August 2017 Injury incident of 21 July 2017 was reported to

Base Commanding Officer as a Near Miss Report, concealing

that it was an injury incident

k.      2 August 2017 a Near Miss Report instead of an injury report

was opened by the Base Safety Mishap Investigator, as a result

of the wrongful act, of concealing the multiple injuries,

committed by the FCS.

l.      2 August 2017 Mishap Investigator closed the Near Miss

Report.

m.      18 August 2017 Ms. Richardson Submitted a Claim for

reimbursement for medical costs for respiratory urgent care

treatment, eye inflammation injury optometry and

ophthalmology care treatment, and loss of earnings, for the

unsafe/unhealthful injury incident that occurred on 21 July 2017. The claim was submitted to the FCS.

n.     18 August 2017 MI reopened Near Miss Report. No correction was noted in ESAMS entries or the MI Timeline entries provided to OSHA by Installation Safety Manager, that injuries had been sustained for which medical care had been required and had resulted in loss of work/income for Ms. Richardson. The status of the entry remained as a near miss instead of an injury, in the report submitted to OSHA in November of 2017.

o.     24 August 2017 MI with Mayport Naval Station JAG officer conducted re-enactment using alternate cleaning product, and was unable to detect the product fumes. Base Safety had a duty of care to provide an interim response to Ms. Richardson, the originator of the incident report as mandated by OPNAVINST 5100.23G.  Base Safety breached that duty of care.  No communication was had with Ms. Richardson to get details directly from her of the incident by either Base Safety or JAG officer.

p.     1 September 2017 MI closed Near Miss Report

q.  18 September 2017 MI reopened Near Miss Report as a result of Ms. Richardson letting the FCS know fumes/vapors were still entering the spaces.

r.  22 September 2017 MI conducted second re-enactment using the undiluted industrial grade pine cleaner.  MI and Mayport Naval Station JAG confirmed that undiluted industrial pine cleaner poured down the drain located in the locker rooms, resulted in pine cleaner fumes coming through the HVAC system into not only the massage spaces but into other spaces inside the fitness center as well.

s.  22 September 2017 during the successful re-enactment exercise the fumes that entered into other spaces in the facility caused an asthma attack for a Fitness Center employee, who was in a space not near the massage treatment rooms.  The asthma attack was witnessed by Ms. Richardson and Gregory, another Fitness Center employee.

t.  22 September 2017 from timeline provided to OSHA by MI.

> "MI Recommendation — FCS contact NAVFAC and obtain building schematic to see if there was any air intake vents are near the men's sauna that could have possibly picked up the Pine Sal odor from the sauna and directed to/thru room # 142. And if so, would there be a way to either re-

route the air flow, or could that air intake vent and/or valve be closed."

"Finding — Building (Gym) schematics were obtained from NAVFAC. **Nearest outside air intake vent** to location of sauna **was located outside, east side of building, near buildings backup generator**." (emphasis added)

u.  28 September 2017 ESAMS report "display of status" shows

Near Miss Report ID 174605 was closed. There was a finding of

a sauna vent being located near the HVAC air intake.  The MI

recommendation includes the following:

"If so, would there be a way to either re-route the air flow, or could that air intake vent and/or valve be closed."

There is no record in the timeline or ESAMS that after

NAVFAC provided the schematics that any attempt was made

to determine if either of the options recommended by the MI, to

either reroute the airflow or close that air intake, to prevent

continued fumes/vapors from plumbing vent/stack exhaust

being recirculated into the building through the fresh air HVAC

intake, had been investigated.  Nor is any mention made of the

need to implement required safety measures, as indicated by

ASHREA, for the additional finding that the diesel

backup/emergency generator is located near the HVAC air

intake.   ASHREA STANDARDS HANDBOOK CHAPTER 46

BUILDING AIR INTAKE AND EXHAUST DESIGN

> "Contamination Sources
> Some contamination sources that need consideration in stack and intake design include the following. Toxic Stack Exhausts. Boilers, emergency generators, and laboratory fume hoods are some sources that can seriously affect building indoor air quality because of toxic air pollutants. These sources, **especially diesel-fueled emergency generators,** can also produce strong odors that may **require administrative measures,** such as generator testing during low building occupancy or temporarily closing the intakes."  (emphasis added)

v.   The Fitness Center facility, where the injury incidents took place, is a new building completed in 2013. OPNAVINST 5100.23G 3004. Building Design and Maintenance Requires:

> "c. Regions/activities shall ensure that building designs properly locate air intakes and exhaust vents or stacks during new and renovated building construction.
>
> (2) Place exhaust vents on the opposite side of the building from fresh air intakes. Do not locate intakes and exhaust vents in close proximity to each other.
>
> (3) Extend all exhaust stacks or chimneys beyond the roofline of the building.  Exhaust stacks should have sufficient height and discharge velocity to ensure that exhaust gases release into the true airflow over the building. If located lower than the true airflow, exhaust gases could swirl at the edges of the building and be pulled back inside through a fresh air intake

The findings of the MI show breached duty of care during the design/building of the facility.  Adherence to item (2) above would have prevented the chemical fumes injury incidents suffered by Ms. Richardson.

w.    1 September 2017 Ms. Richardson asked the FCS about the claims procedures and when a reimbursement of expenses might be expected.  No guidance or assistance was given. The JAG manual indicates if requested, assistance is available to the claimant. The FCS only stated that Ms. Richardson might not be reimbursed, that it was up to the attorneys now.

x.    The JAG manual indicates preliminary investigations should take no more than 3 days.  Incident occurred on 21 July 2017. Damages claim was submitted to the FCS on 18 August 2017. Ms. Richardson received no communication or inquiries about the incident from MWR Legal Officer or Mayport Naval Station Judge Advocate General until voicemail of 3 October 2017, from the JAG Officer 74 days after the immediately reported injury incident.

y.    Prior to receiving the 6 December 2017 letter from OSHA regarding the complaint she filed, Ms. Richardson did not

receive any written interim or complete response with the

findings from the investigator as mandated by OPNAVINST

5100.23G Chapter 10.  1002. Hazard Reporting

> "e. Provide an interim response to the report originator. The safety office shall provide an interim or complete response in writing to the originator of a written report within ten working days of receipt. Interim responses shall include the expected date for the complete response. If the investigator validates the reported hazard, the complete response shall include a summary of the action taken for abatement. If no significant hazard is found to exist, the reply shall include the basis for the determination.

> f. Encourage the originator to follow through if he/she is dissatisfied. The complete response shall encourage, but not require, the originator to informally contact the safety office if he or she desires additional information or is dissatisfied with the response. Complete responses shall indicate that formal appeals can be made and shall state or provide the reference for procedures for making appeals and appeals levels."

z.   The FCS had a duty of care mandated by OPNAVINST

5100.23G 1005 a. to provide safety training and notify Ms.

Richardson of her rights. The FCS breached this duty.  As a

result Ms. Richardson was unaware of the procedures and

rights which would have ultimately allowed her to:

- participate in the investigation,

- be sure that the investigator had correct information about the incident so the appropriate investigation could be done,

- find the problem in 2016 after the first incident,

- be sure corrective measures were put in place and

- ensure her right to a safe place to work.

3. **25 October 2017 – Unsafe/Unhealthful Injury Incidents**

    a. **1010 AM event** - cleaning chemicals and personal care product fumes/vapors, causing adverse reactions for Ms. Richardson and the other massage therapist Nikki Abernathy, were being forced into massage spaces through HVAC system.  Event was verified by MWR employee, spaces were aired out and injury incident report submitted by Ms. Richardson and Ms. Abernathy.

    b. **242 PM event** – diesel exhaust fumes forced into massage spaces through HVAC system.

        i. The FCS had previously instructed Ms. Richardson that all fumes incidents had to have verification by an MWR employee and that only the FCS or the MOD could call base safety.  He reminded her of the instruction to have MWR staff verify, in his email to her on 2 October 2017.

ii.    Ms. Richardson left the area to find the MOD to verify and get permission to call EMS.

iii.    MOD came back and verified the fumes.  She said she had to make a call and left the area.

iv.    She returned several minutes later and told Ms. Richardson she could call EMS.

v.    Ms. Richardson called 911 and after telling the dispatcher what was happening, the dispatcher asked if the building had been evacuated. The MOD had made no mention that an evacuation of the building was protocol and had not ordered an evacuation.  Ms. Richardson told dispatcher the building had not been evacuated.

vi.    911 dispatchers received that call at 309 PM. The time from incident occurrence to being given permission to call 911, was twenty-seven minutes.  Distance from Fire Station 1.4 miles, estimated time to get to gym and walk through the building to the back where the massage spaces were located – four minutes.

vii.    EMS came, but due to the twenty-seven minute delay in having to find the MOD, have her verify fumes in the

spaces, her leaving to call someone, her coming back to the area to authorize Ms. Richardson to call to EMS, and due to the opening of the doors to air out the spaces, by the time EMS arrived, thirty-one minutes later, the fumes were no longer detectable.   They tested the air and deemed it to be safe - 31 minutes after the injury incident, but the test was not done when the fumes were present immediately after incident occurred.

viii.   EMS and the MI investigated further and found that maintenance work was being done on the emergency diesel backup generator and the fumes from the generator exhaust were picked up by the fresh air HVAC intake and forced into the massage spaces.   The generator is located near the fresh air HVAC intake.

ix.   The location of the generator being located near the fresh air HVAC is a safety hazard and a violation of OPNAVINST 5100.23G 3004 c. (2).  This hazard was identified by the MI during the 22 September 2017 investigation.  No safety measures had been implemented. This incident was preventable.

c.    25 October 2017 The MI made an appointment with Ms. Richardson to meet Friday morning 27 October 2017

d.    26 October 2017 Ms. Richardson saw an industrial medicine physician for upper respiratory distress complaint caused by morning fumes incident and diesel exhaust the previous day. He referred Ms. Richardson to a pulmonologist with orders not to return to work until seen by the pulmonologist.

e.    26 October 2017 Ms. Richardson called the Base Safety office to speak with the MI to let him know she would be unable to make the 27 October 2017 scheduled meeting and would not return until seen by the pulmonologist. The Installation Safety Manager Naval Station Mayport, Larry Delong answered the phone and Ms. Richardson asked to speak with the MI. He asked her why she was calling to speak with that person. Ms. Richardson told him who she was and that she was calling to let the MI know that she would not be in the office on Friday as planned. The Installation Safety Manager responded, almost in a rant,

> "Why are you meeting with him? What are you wanting? We have over 40 thousand dollars' worth of equipment and have used many resources and nothing is showing up. The air is safe. Have you talked to the building manager? You

should not be calling us you should be talking to him." Ms. Richardson told him, "yes, I have talked to the building manager, what I want are safe spaces to work in and **IF** it has been confirmed that fumes are venting through the HVAC system into our spaces as well as other office spaces, and has caused an asthma attack for one of my clients and one of the fitness center managers, and upper respiratory distress and eye inflammation for me, then the spaces are not safe. And I am calling as a courtesy to the MI to cancel the meeting he requested." The Installation Safety Manager replied, "I have not heard anything about an asthma attack, maybe it's time to get base legal in on this."

Base Safety had a duty of care mandated by OPNAVINST

Safety Manual 5100.23G to provide an interim and/or complete

response.

> "The complete response **shall encourag**e, but not require, the originator to informally contact the safety office if he or she desires additional information or is dissatisfied with the response." (emphasis added)

In stating "You should not be talking to us" the Installation

Safety Manager, Mr. Delong, breached his duty of care to

encourage Ms. Richardson to meet with the MI.

4.   **28 October 2017 unsafe/unhealthful illness incident** in the massage spaces

affecting massage therapist Nikki Abernathy.

a.   Ms. Abernathy called Ms. Richardson at home to inform her of

illness symptoms from being in the spaces. Ms. Richardson told

her to get out of there, fill out an incident report and turn it in to

Mr. Carman.  She did.

    b.    There is no record of this incident in the timeline provided to

OSHA by the Installation Safety Manager Naval Station Mayport,

though a copy of the submitted incident report was sent to OSHA

with the complaint filed by Ms. Richardson.  There is no record of

it in the ESAMS timeline.

5.    **1 November 2017 Ms. Richardson saw a pulmonologist,** he told her she

had developed mild intermittent asthma.  The doctor prescribed a daily

inhaler, emergency oral prednisone and a rescue inhaler.  Ms. Richardson

had no prior medical history of asthma or any illness or condition requiring

the use of daily inhalers, rescue inhaler or emergency prednisone.  She asked

him how long he thought it would take to heal.  He said in his experience

once a person has had several acute or ongoing continued exposures that

creates the need for inhalers, it usually doesn't reverse.

6.    **1 November 2017** Ms. Richardson filed a formal complaint with OSHA

because of her unaddressed concerns for the safety of the massage spaces,

the continuing incidents, continued eye inflammation, and the new

permanent respiratory disability, requiring ongoing medical treatment and

medications.

7. **6 December 2017 OSHA sent Ms. Richardson a letter** with the report of

findings for the formal complaint she filed.

    a. This was the first access Ms. Richardson was given to the results

        of the investigation from the 21 July 2017 incident.

    b. OPNAVINST 5100.23G mandates:

> "The safety office shall provide an interim or complete
> response in writing to the originator of **a written report
> within ten working days of receipt**." (emphasis added)

    Ms. Richardson's first access to any investigation response for

    any of the incidents was:

- **475 days beyond** the 10 working days requirement for the

  13 May 2017 incident,

- **124 days beyond** the 10 working days requirement for the

  July 2017 incident and

- **28 days beyond** the 10 working days requirement for the

  25 October 2017 incident.

    c. The OSHA letter of 6 December 2017 was Ms. Richardson's first

        opportunity to verify whether the information submitted in

        ESAMS, by the FCS, was accurate. It wasn't. The FCS had

        concealed that the 21 July 2017 incident was a multiple injury

        incident. This prevented a priority safety investigation and swift

findings and corrective measurements for the confirmed safety

hazards which would have prevented the 25 October 2017 injury

incidents and the 28 October 2017 illness incident.

d.     The OSHA letter of 6 December 2017 was the first opportunity

Ms. Richardson had to see that no timeline entry was made

regarding the 28 October 2017 illness incident submitted by Ms.

Abernathy.  No comments were made in ESAMS as was done for

the 25 October 2017 incident.  No comment is made by the

Installation Safety Manager in the timeline he provided to OSHA.

8.  **26 June 2018  Basketball Floor - stripping/painting/varnishing illness**

**incident**

a.     26 June 2018 Ms. Richardson emailed the FCS and the Fitness

Coordinator, Ms. Deason, that she had been in the office for about

45 minutes and was experiencing burning and redness of the eyes,

headache and coughing. The FCS responded stating:

> "I have been informed that only while they are putting the
> water based coating down will there be any issue, and they
> have how added plastic sheeting on both doors, opening up
> the west side doors, and adding fans to blow back into the
> room."

Floor product fumes were being circulated through the HVAC

system into the massage spaces.  Ms. Richardson cancelled her

appointments and went home.

b.  26 June 2018 Fitness Coordinator, Ms. Deason touched base with

Ms. Richardson to see if she was okay. Ms. Deason indicated

several people were sent home ill on previous days.  No notice

was given to Ms. Richardson, prior to entering the fitness center,

that people were experiencing illness to floor finish fumes.

c.  29 June 2018 still feeling the effects of flooring product fumes

exposure, Ms. Richardson emailed the FCS to check on status of

varnishing.  The FCS emailed saying,

> "They are applying product today but they have sealed around
> all the doors and have fans blowing to the outside. They will
> put another coat on Saturday and we will take possession of
> the courts on Tuesday 7/3".

Ms. Richardson cancelled all appointments and closed the

massage office until 3 July 2018.

d.  Ms. Richardson had been given a heads up that flooring work

would be done and was told there would likely be some smells

and some noise. However, no pass down was given that there

were MSDS safety warnings for the products that were being

used, nor that there would be caustic fumes when the products

being used were being applied. No additional ventilation

precautions were initially taken to prevent fumes from affecting

personnel or patrons, no signs were displayed for patrons or

employees about the application of the product and its safety

precautions, employees became ill and were sent home, some

patrons left immediately after entering the building because of the

fumes. No warning notices were posted for patrons or employees

who might be pregnant or have respiratory disabilities like

asthma, COPD, or emphysema.

9.   **30 August 2018 Charcoal grill smoke/fumes** venting in massage treatment

room during session on client.  Ms. Richardson discussed with MWR

Fitness Center employee Nicole Knight.  There was an employee BBQ

luncheon event.  The grill was located outside, back near break room, on

east side of building below air intake for HVAC.  Massage spaces are still

vulnerable to caustic contaminated air and daily ongoing low level Volatile

Organic Chemicals (VOCs) fumes entering the massage spaces through the

HVAC intake.

10.   **September 2018 – Ms. Richardson found and requested a reasonable**

**accommodation** to provide, **at no cost to the government,** end line

charcoal filters to prevent on-going low level Volatile Organic Chemical air

contamination and future acute injury causing chemical fumes/vapor events,

for the protection of employees and patrons in the enclosed spaces. The request included the information that an HVAC engineer needed to be contacted to verify what MERV rating for filter was permissible, to prevent damage to the HVAC system. Ms. Richardson was not allowed to talk to the HVAC engineers and the reasonable accommodation was given no consideration. Without a way to prevent ongoing low level VOC contamination, and future injury incidents in the spaces provided, the right to a safe working environment was denied.

11.  **30 September 2018 – Ms. Richardson ends 20 year employment**

   a.  The Pulmonologist informed Ms. Richardson that the continued exposures were detrimental to her health and that she needed to find a place to work where she could control exposure to chemicals and personal care products.

   b.  Ms. Richardson had been wearing masks for almost a year, this helped with her new respiratory disability but did not protect her from repeat headaches or eye inflammation. Nor did it protect her massage clients.

   c.  The Fitness Center is no longer a safe place for Ms. Richardson to work. Because of the asthma and chemical sensitivity caused by the repeat injury incidents, she can no longer work in a normal massage

therapy work environment.   In a normal massage therapy/work environment Ms. Richardson would not be in control of spa or massage products used, be in control of what could vent through any commercial HVAC system, be in control of cleaning products used or be in control of fragranced products worn by other employees in those environments.

d.  The special needs created by the new respiratory disability, required the Ms. Richardson, to request a Reasonable Accommodation from the City of Jacksonville to work out of her home, where she could control exposure to chemical and personal care product fumes/vapors and the HVAC system.   The process began in October 2018 and the Reasonable Accommodation was granted and became effective 12 April 2019.

e.  Once granted, Ms. Richardson had to have work done to her home, apply for the establishment license, pass the state inspection and wait for her establishment license.

f.  The establishment license was received 10 April 2020, just after the Covid Lockdown.

12.  **19 October 2019 – Ms. Richardson filed claim for 25 October 2017 incident**

Plaintiff, Ms. Richardson, waited for filing a claim for the 25 October 2017 incidents in hopes that given time the body would heal itself and no ongoing medical care would be required, and the claim would be limited to expenses already incurred. That hasn't happened.

13.  **17 June 2020** Ms. Richardson discovered that MWR Fitness Center was governed under the OPNAVINST Safety Manual. Once the manual was obtained and read Ms. Richardson became aware of violations of rights and regulations mandated in the OPNAV Safety Manual and she immediately filed an amended claim and submitted it to the Navy in a timely manner. Additionally at this time, through research, Ms. Richardson found the JAG instruction manual guideline that allowed Ms. Richardson to request assistance and assignment of an attorney to answer procedure and rights questions. Ms. Richardson made the request but no assignment was made. Instead a letter of final denial was sent.

14.  **21 July 2020 letter of final denial –** Ms. Richardson received letter of denial stating claim alleges multiple exposure incidents, filing of the claims for the 13 May 2016 and 21 July 2017 are untimely.

    a.  Filing of claims timeline:

        1.  13 May 2016 incident

- Ms. Richardson suffered an injury. It healed within three days with no further consequences. So no damages claim was necessary.

- No damages were submitted for this incident in the claim submitted to the Department of the Navy on 22 October 2021.

2.  21 July 2017 injury incident

- Damages claim for this incident was submitted on 18 August 2017, within 30 days of injury incident, through Fitness Center Supervisor. This was well within the 2 years requirement.

- No damages were submitted for this incident in the claim submitted to the Department of the Navy on 22 October 2019, as it had been filed in the previous claim on 18 August 2017.

3.  25 October 2017 - multiple incidents – 1010AM and 242PM.

- Damages claim for the multiple exposure incidents on 25 October 2017 was submitted within 2 years of the injury incident to the Department of the Navy.

- Damages claim requested reimbursement only for expenses/losses incurred from 25 October 2017 incident forward and future ongoing medical expenses. No damages from previous incidents were included with the claim submitted on 22 October 2019.

14. **30 December 2020** Ms. Richardson timely submitted request for reconsideration of denial.

15. **19 February 2021** Navy JAG Office mailed final letter of denial.

16. **Continuing Violations Resulting in Personal Injury (see attached)**

   a. The Continuing Violations injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of Florida, resulted in emotional injury, financial injury, diminished quality of life and permanent physical injury for Ms. Richardson.

## III.  DAMAGES

As a result of preventable repeat chemical fumes injuries, caused by the

negligent and wrongful acts and omissions of employees of the United States Government while acting within the scope of their offices and employment, Ms. Richardson has suffered the following injuries for which full compensation under the law is sought:

1. Physical Injury:

    a. incidents caused occupational asthma, a permanent respiratory disability

    b. incidents caused chemical hypersensitivity, (i.e. smoke, cleaning products, personal care products fragrance etc.) triggering irritation/inflammation of the eyes, headaches and asthma.

2. Economic/Financial Injury:

    a. Costs for initial and on-going medical care, medications and supplies.  The daily inhaler Breo Ellipta, one of three medications,  Good RX price at the time of submission of this claim:  https://www.goodrx.com/breo-ellipta

| | | | |
|---|---|---|---|
| Publix | | $375.10 with free coupon | GET FREE COUPON |
| CVS Pharmacy | $449 retail Save 15% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Walgreens | $452 retail Save 16% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Walmart Neighborhood Market | $449 retail Save 13% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Target (CVS) | $449 retail Save 15% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Costco | $421 retail Save 9% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Winn-Dixie | $459 retail Save 18% | $375.10 with free coupon | GET FREE COUPON |
| Walmart | $449 retail Save 13% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |
| Navarro Discount Pharmacy | $459 retail Save 15% | $378.94 with free discount | GET FREE DISCOUNT Restrictions apply |

b.      Loss of earnings for cancelled appointments from 26 October 2017 to 18 November 2017.

c.      Six Month's Loss of earnings during reasonable accommodations request process to the City of Jacksonville Planning Department for zoning waiver to work out of home where exposure to chemicals, personal care products and operation of HVAC system can be controlled.

3.   Emotional distress

a.      due to loss of previous good health

b.   due to government employees lack of concern for the wellbeing of occupants of the massage spaces and  failure to properly respond to and address reported unsafe/unhealthful working conditions and not knowing when the next event might be and if it would be worse than the last one,

c.   due to the enormous task of filing claim and lawsuit

d.   due to added financial burden to Ms. Richardson's single lower income household for on-going medical treatment and loss of earnings requiring use of limited retirement savings,investment accounts, and living on credit card.

4.   Diminished quality of life due to:

a.   inability to work in a normal work environment of  the massage therapy/spa profession where she cannot control exposure to cleaning and personal care products which continue to trigger adverse health reactions (i.e. headaches, burning eyes and asthma attacks) and where she has no control over HVAC system.

b.   inability to be in public environments without a mask, (i.e.

c.   restaurants, department stores, grocery stores, the beach) where exposure to chemical fumes/vapors, smoke and personal care

products continue to trigger adverse health reactions.
Limitations on being in private environments (backyard if
townhome neighbor is using fragranced dryer sheets, has
charcoal BBQ going, or is smoking)

d.  long-term/on-going need to wear charcoal filter masks in public
environments to reduce chemical exposure.

e.  social isolation

## IV.  PRAYER FOR RELIEF

"The Plaintiff respectfully requests judgement against the Defendant for

1) monetary damages in the sum of $134,561.76 for past and future
medical expenses and loss of income.

2) costs of suit; and

3) such other and further relief as the court shall deem proper.

## V. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the
best of my knowledge, information, and belief that this complaint: (1) is not
being presented for an improper purpose, such as to harass, cause unnecessary

delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## FOR PARTIES WITHOUT AN ATTORNEY

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

## ATTACHMENTS:

1. Continuing Violations Chart

2. ESAMS Report as submitted to OSHA by Base Safety

Respectfully submitted by:

Diana Lisa Richardson, Pro Se Plaintiff

Signature of Plaintiff _____

1179 Bayshore Drive North, Jacksonville, Florida 32233

904-563-2977